**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| PAYRANGE LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. |
| v. | ) |
| | ) JURY TRIAL DEMANDED |
| AIRWALLET APS and AIRWALLET INC., | ) |
| | ) |
| Defendant. | ) |

**PAYRANGE LLC'S COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff PayRange LLC ("PayRange"), by and through the undersigned attorneys, files this Complaint against Defendants Airwallet ApS and Airwallet Inc. (collectively, "Airwallet") and alleges as follows:

**INTRODUCTION**

1. PayRange brings this action for patent infringement based on Airwallet's willful infringement of PayRange's patented technology, including U.S. Patent Nos. 10,891,608 (the "'608 Patent") and 11,481,772 (the "'772 Patent") (collectively, the "patents-in-suit"). PayRange's acclaimed technology enables its customers to upgrade coin-operated, unattended retail machines into state-of-the-art mobile payment solutions using a small module called "BluKey." PayRange's mobile app communicates with BluKey to enable mobile transactions. The United States Patent & Trademark Office ("USPTO") awarded PayRange a portfolio of patents for its innovations. PayRange's patent portfolio is prominently identified on its website pursuant to PayRange's virtual patent marking practices: https://payrange.com/patents/.

2. On information and belief, Airwallet has used and continues to use PayRange's patented mobile payment solutions in its mobile application and payment systems such as the

Airwallet mobile payment system, which includes the Airwallet App, Airwallet PRO hardware, and associated backend servers and cloud services (collectively, "Accused Products").

3. PayRange found success in the laundry and vending industries, attracting significant customers including WASH. Unfortunately, competitors took notice and improperly copied PayRange's technology. As a result, PayRange initiated litigation against a major competitor (KioSoft) and subsequently against KioSoft's major customer (CSC). In response, KioSoft challenged the validity of PayRange's patents before the USPTO. PayRange prevailed with confirmed claims in every USPTO challenge that proceeded to a Final Written Decision.

4. On January 31, 2024, PayRange and KioSoft issued a press release announcing a settlement. KioSoft's President, Charles Lee, is quoted:

> *"While we had challenged the PayRange patents vigorously, the Patent Trial and Appeal Board (PTAB) upheld the PayRange patents and, although we disagreed with the result, we must now accept that PayRange has valid claims," stated Charles Lee, President of KioSoft. "We respect the technologies that have helped the self-service industry thrive; and we look forward to continuing to lead innovation and development by providing best-in-class service to our customers with this fully-licensed technology, without any further legal distractions."*

5. KioSoft agreed to license PayRange's technology for an amount that, at the time, was estimated to exceed $62 million over a ten-year period, dependent on outcomes with a base license of $40 million.

6. In April 2024, on the heels of its settlement with KioSoft, PayRange also resolved its patent infringement dispute with KioSoft's customer CSC.

7. In May 2024, PayRange reached a patent licensing deal with WASH, one of the largest providers of laundry facilities in the United States. The agreement licenses PayRange's patents for use with the WASH-Connect Mobile Payment App and will continue for the term of PayRange's patents. In the press release announcing the license, WASH's CEO, Jim Gimeson stated:

> *"We're a privately held company founded in 1947 and we hold dear our reputation for integrity and ethical practices," says WASH CEO Jim Gimeson. "As operators, we hold a deep respect for the innovations PayRange has brought to elevate the laundry industry."*

8. In December 2024, PayRange also resolved its patent infringement dispute with Card Concepts Inc. (CCI) by completing a license agreement. In the press release announcing the license, CCI's President, Steve Marcionetti stated:

> *"Our priority at CCI has always been delivering the best possible experience to our customers, and entering into this licensing agreement ensures that we can continue to do just that. By working constructively with PayRange, we have found a path forward that allows both companies to focus on delivering solutions to customers and serve our respective markets with confidence and respect."*

9. In March 2025, PayRange also resolved its patent infringement dispute with Nayax, Ltd.

10. The PTAB has consistently and repeatedly upheld the validity of PayRange's patents. For example, defendants filed three distinct PTAB petitions against the '608 Patent, each asserting numerous invalidity grounds. The PTAB denied institution for each petition. The '772 Patent enjoyed similar success. Despite three PTAB challenges, asserted claim 11 of the '772 patent remained valid. In total, defendants filed seventeen PTAB petitions against PayRange patents and at least one challenged claim from each patent has survived the onslaught of challenges.

11. In view of its success in licensing the patents, PayRange hoped that the remaining companies in the industry would cease and desist their infringement of PayRange's patents and negotiate a resolution for their past infringement. While many did, a few outliers, including Airwallet and Alliance (which is a defendant in a related action), still refused to take a patent license.

12. On June 28, 2024, PayRange sent Airwallet ApS and Airwallet Inc. a letter providing notice of its patent infringement and inviting licensing discussions regarding a possible license. A true and correct copy of the June 28, 2024 letter is attached hereto as **Exhibit 1**. In that letter, PayRange identified specific PayRange patents and pending applications and provided detailed claim charts for certain patents. A true and correct copy of PayRange's list of patents and pending applications provided with the June 28, 2024 letter is attached hereto as **Exhibit 2**.

13. On July 5, 2024, CEO and co-founder of Airwallet ApS Christian B. Mortensen sent an email to PayRange acknowledging receipt of the letter.

14. On August 9, 2024, the CEOs of PayRange and Airwallet ApS met to discuss Airwallet's accused systems, PayRange's infringement allegations, and Airwallet's need for a license under the PayRange patent portfolio. Unfortunately, Airwallet would not agree to a patent license.

15. On June 9, 2025, PayRange's counsel and CEO of Airwallet Inc. Carlos Sessarego met to discuss to further discuss PayRange's infringement allegations and a potential amicable resolution.

16. On July 16, 2025, PayRange, Airwallet ApS, and Airwallet Inc. met to discuss Airwallet's accused products, PayRange's infringement positions, and potential resolution of the dispute.

17. On September 17, 2025, counsel for Airwallet responded and provided Airwallet's purported non-infringement positions based on Airwallet's own claim-construction theories and stating that Airwallet would not enter into a license agreement.

18. On October 7, 2025, PayRange responded to Airwallet's September 17, 2025 correspondence, providing a detailed rebuttal to Airwallet's asserted defenses and supplying

4

additional infringement analysis and claim charts demonstrating Airwallet's infringement of, at minimum, claims 1, 5-7, 11, and 12 of the '608 Patent and claim 11 of the '772 Patent. A true and correct copy of the October 7, 2025 letter is attached hereto as **Exhibit 3**. A true and correct copy of the claim charts for the '608 Patent and for the '772 Patent are attached hereto as **Exhibits 4 and 5**, respectively.

19. In that response, PayRange identified the lack of factual and legal support of Airwallet's non-infringement positions (including contradictions with Airwallet's own public technical documentation), clarified PayRange's infringement positions, and reiterated its preference for an amicable resolution. Despite this detailed notice and PayRange's repeated efforts to resolve the matter without litigation, Airwallet has continued its infringing conduct without a license.

20. On October 21, 2025, Airwallet responded by again rejecting PayRange's infringement allegations and disputing PayRange's claim construction positions, while expressly acknowledging that Airwallet's non-infringement position rested on its own legal interpretations and not on any judicial determination. Airwallet further asserted that it would continue its unlicensed operations.

21. On October 29, 2025, PayRange replied, reiterating that Airwallet's non-infringement arguments were meritless, identifying additional internal inconsistencies in Airwallet's positions, and confirming that Airwallet infringed multiple issued PayRange patents, notwithstanding Airwallet's asserted defenses. PayRange again explained that Airwallet must either cease its infringing conduct or obtain a license, and PayRange reiterated its willingness to resolve the dispute amicably while maintaining the merits of its infringement claims.

22. Despite repeated and detailed notice and identification of specific claims of the patents-in-suit infringed by Airwallet, Airwallet has continued to make, use, sell, offer for sale, and/or import the Accused Products into the United States without a license. Accordingly, PayRange brings this action to protect its innovations and patent rights and stop Airwallet's ongoing infringement.

## THE PARTIES

23. PayRange is a Tennessee limited liability company with its principal place of business at 9600 NE Cascades Parkway, Suite 280, Portland, OR 97220.

24. On information and belief, Airwallet ApS is a Danish private limited liability company organized under the laws of Denmark, with a principal place of business at Pakhusgården 28, 5000, Odense C, Denmark.

25. On information and belief, Airwallet Inc. is a corporation organized under the laws of Delaware, with a principal place of business at 611 N Golf Drive, Hollywood, FL 33021.

26. On information and belief, Airwallet Inc. is a U.S. subsidiary of Airwallet ApS, through which Airwallet conducts business in the United States, including selling, offering for sale, supporting, and importing the Accused Products for U.S. customers.

## JURISDICTION AND VENUE

27. This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.*

28. This Court has subject matter jurisdiction over this patent infringement action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

29. Upon information and belief, this Court has personal jurisdiction over Defendant Airwallet Inc. because it is incorporated in the State of Delaware and is therefore subject to personal jurisdiction in this District.

30. Upon information and belief, this Court has personal jurisdiction over Defendant Airwallet ApS under Del. Code. Ann. Tit. 10, § 3104 because, *inter alia,* Airwallet ApS causes tortious injury in Delaware by inducing Airwallet Inc. and/or its customers to directly infringe the patents-in-suit. On information and belief, Airwallet ApS has purposefully directed infringing activities at the United States and this District through its U.S. subsidiary, Airwallet Inc., including by authorizing, supporting, providing software and backend services for, coordinating deployment and technical support for, and profiting from the Accused Products that are offered, sold, imported, and used in the United States. Further, on information and belief, Airwallet ApS has purposefully and voluntarily placed one or more of its infringing products, as described below, into the stream of commerce with the expectation that such products would be installed and used in Delaware. On information and belief, Airwallet's infringing products have been and continue to be used in this District. Airwallet ApS's minimum contacts with Delaware are such that the exercise of personal jurisdiction over Airwallet ApS is consistent with due process and does not offend traditional notions of fair play and substantial justice.

31. Alternatively, this Court has personal jurisdiction over Airwallet ApS under Fed. R. Civ. P. 4(k)(2) because: (a) PayRange's claims for patent infringement in this action are claims arising under federal law; (b) Airwallet ApS is not subject to the general jurisdiction to any state's courts of general jurisdiction; and (c) exercising jurisdiction over Airwallet ApS is consistent with the U.S. Constitution.

32. Venue is proper for Airwallet Inc. in this District pursuant to 28 U.S.C. § 1400(b) because Airwallet Inc. is incorporated in the State of Delaware and therefore resides in this District.

33. Venue is proper for Airwallet ApS in this District pursuant to 28 U.S.C. § 1391. Airwallet ApS is a foreign entity, and it may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3).

34. Joinder of Defendants is proper under 35 U.S.C. § 299 because Defendants are liable jointly, severally, or in the alternative with respect to acts of patent infringement. As discussed below, Airwallet Inc. has, made, sold, offered to sell, and used the Accused Products in the United States while Airwallet ApS has, on information and belief, participated in the manufacturing and importation of the same Accused Product. As such, the allegations herein relate to the making, using, importing into the United States, offering for sale, or selling of the same Accused Product.

## PATENTS-IN-SUIT

35. To protect its unique and innovative technologies, PayRange filed a provisional patent application (No. 61/917,936) on December 18, 2013. Several patents issued based on this original application, including the patents-in-suit, as summarized below.

36. On January 12, 2021, the USPTO issued the '608 Patent, titled "Method and System for an Offline-Payment Operated Machine to Accept Electronic Payments." A true and correct copy of the '608 Patent is attached hereto as **Exhibit 6**.

37. On October 25, 2022, the USPTO issued the '772 Patent, titled "Method and System for Presenting Representations of Payment Accepting Unit Events." A true and correct copy of the '772 Patent is attached hereto as **Exhibit 7**. On November 22, 2023, PayRange filed

a disclaimer in the '772 Patent, which disclaims Claims 1-6, 8-10 and 12-20 of the '772 Patent. A true and correct copy of the disclaimer is attached hereto as **Exhibit 8**.

## COUNT I - INFRINGEMENT OF THE '608 PATENT

38. PayRange realleges and incorporates the allegations of the preceding paragraphs of this complaint as if fully set forth herein.

39. PayRange is the assignee and owner of all right, title, and interest in and to the '608 Patent. PayRange has the exclusive right to make, use, sell, and offer to sell any product embodying the '608 Patent throughout the United States, and to import any product embodying the '608 Patent into the United States.

40. On October 23, 2020, during prosecution of the application that issued as the '608 Patent, the patent examiner issued a Notice of Allowance. In so doing, the patent examiner noted that "[t]he prior art of record neither anticipates nor renders obvious the claimed subject matter of the instant application as a whole either taken alone or in combination, in particular, prior art of record does not teach storing, in the memory of the payment module, a number of the electrical pluses that must be received by the control unit to initiate an operation of the offline payment operating machine; receiving a wireless request via the short-range wireless transceiver from a respective mobile device of the one or more mobile devices to initiate a cashless operation of the offline-payment operated machine; and in response to the wireless request: determining a first number of electrical pulses to output via the first interface module to the control unit of the offline payment-operated machine; causing the offline payment-operated machine to initiate the requested cashless operation by issuing the first number of electrical pulses to the control unit via the first interface module; and sending operation information corresponding to the initiated operation of

the offline payment-operated machine to the respective mobile device via the short-range wireless transceiver." *See id.* at 2-3.

41.     In reaching these conclusions, the patent examiner referenced as "closest prior art" U.S. Patent Publication No. US 2009/0171682 A1 by Dixon ("Dixon") and U.S. Patent No. 8,600,899 B1 by Davis ("Davis"), which represent conventional approaches around the time of the effective filing date of the '608 Patent. The examiner concluded that "[t]he arguments presented by the Applicant along with the combination of elements, such as, the claims recite at least the steps to cause an offline payment-operated machine to receive a wireless request from a mobile device and emulate a signal sequence that would be issued by a coin receiving switch in response to receiving a preset number of coins of a predetermined type. These steps enable alternative ways to use a payment-operated machine by practically applying analog signal emulation in a way that adds wireless communication capabilities to legacy systems, thus improving the technology of payment-operated machines. The claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks and recite significantly more than an abstract idea." *See id.* at 3-4.

42.     On December 16, 2021, the PTAB issued a decision denying institution of post-grant review of the '608 Patent. PGR2021-00084, Paper 12. In that proceeding, the petitioner had argued, *inter alia*, that the '608 Patent was anticipated by U.S. Patent No. 9,092,768 by Breitenbach ("Breitenbach"). In rejecting the petitioner's argument, the PTAB explained, "Breitenbach does not explicitly describe 'the particular structure included in the retrofit device to generate and output the 'coin-in' signals to the VMC to 'fool' the machine into detecting proper payment for a machine operation." *Id.* at 26. The PTAB acknowledges that Breitenbach states that "[t]he retrofit device may, in some embodiments, 'fool' the machine by replicating a 'coin-in'

signal indicative of the proper payment amount for the desired unit of product, causing the machine to dispense the unit of product." *Id.* at 25-27 (quoting Breitenbach at 8:49-62). But the PTAB found this disclosure lacking and determined that, "Petitioner does not sufficiently explain why this necessarily means that '[i]n order to replicate the 'coin-in' signal, the retrofit device inherently stores and determines the number of electrical pulses.'" *Id.* at 27 (quoting PGR2021-00084, Paper 2 at 60). Storing and determining the number of electrical pulses within a payment module was an unconventional approach to allow electronic payment in an off-line machine.

43.     On January 24, 2024, the PTAB issued a decision denying institution of post *inter partes* review of the '608 Patent. IPR2023-01188, Paper 12. In that proceeding, the petitioner had argued, *inter alia*, that the '608 Patent was rendered obvious by U.S. Publication No. 2010/0227671 A1 by Laaroussi ("Laaroussi"), U.S. Patent No. 4,374,557 by Sugimoto ("Sugimoto"), U.S. Patent No. 10,121,318 B2 by LeMay ("LeMay"), and U.S. Patent No. 6,840,860 ("Okuniewicz"). *Id.* at 10-14. In its decision denying institution, the PTAB determined that "Laaroussi does not disclose whether its data and instructions are the particular pulses required by limitation 1(c) ('in response to insertion of a single coin') or whether its data and instructions indicate the cumulative amount of received coins." *Id.* at 15. The PTAB's finding further confirms that "first interface module…" element of claim 1 represents an unconventional approach which was neither routine nor well-understood.

44.     A significant advantage of the '608 Patent is the ability to emulate an analog signal generated by the coin receiving switch of the offline payment-operated machine. Another advantage was receiving a wireless request via the short-range wireless transceiver from a mobile device. A further advantage is causing an offline payment-operated machine to initiate the

requested cashless operation by issuing the first number of electrical pulses. These advantages were not routine, well-understood or conventional, especially when considered in combination.

45. Upon information and belief, Airwallet has and is infringing at least claim 1, 5-7, 11, and 12 of the '608 Patent in this District and elsewhere in the United States, by, among other things, directly or through intermediaries, making, using, selling and/or offering for sale the Accused Products, covered by one or more claims of the '608 Patent to the injury of PayRange. Airwallet is directly infringing, literally infringing, and/or infringing the '608 Patent under the doctrine of equivalents. Airwallet is thus liable for infringement of the '608 Patent pursuant to 35 U.S.C. § 271(a).

46. Airwallet has known of the existence of the '608 Patent since at least the date of PayRange's initial notice letter (June 28, 2024), and Airwallet's acts of infringement have been willful and in disregard for the '608 Patent, without any reasonable basis for believing that it had a right to engage in the infringing conduct.

47. **Exhibit 4**, which is incorporated herein, is a chart providing an element-by-element comparison between Airwallet and numerous claims of the '608 Patent.

48. To the extent Airwallet's payment systems, without more, do not directly infringe at least the above-identified claims of the '608 Patent, Airwallet actively encourages their business partners, end-users and/or customers to use Airwallet's payment devices in an infringing manner, including through installation and configuration instructions for deploying Airwallet PRO hardware with payment-operated machines, user guides and training materials directing end users to initiate and complete a transaction via the Airwallet App and mobile interface, marketing and sales materials promoting the Accused Products' ability to enable mobile transactions with specific machines, and technical support that assists customers in configuring and operating the Accused

Products in an infringing manner. Airwallet encourages infringement with a specific intent to cause its business partners and customers to infringe and with knowledge of the '608 Patent since at least June 28, 2024. Airwallet's acts thus constitute active inducement of patent infringement in violation of 35 U.S.C. § 271(b).

49. In addition, Airwallet contributes to infringement of the same under 35 U.S.C. § 271(c) inasmuch as the infringing products offered for sale and sold by Airwallet are each a component of a patented machine or an apparatus used in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in infringement of the '608 Patent.

50. Airwallet's direct infringement, contributory infringement, and inducement of infringement have irreparably harmed PayRange.

51. Upon information and belief, Airwallet will continue to infringe the '608 Patent unless enjoined.

52. Pursuant to 35 U.S.C. § 284, PayRange is entitled to damages adequate to compensate for the infringement. PayRange has complied with its patent marking obligations including by virtually marking its patents through the following URL: https://payrange.com/patents/

53. This case is "exceptional" within the meaning of 35 U.S.C. § 285, and PayRange is entitled to an award of attorneys' fees.

## COUNT II - INFRINGEMENT OF THE '772 PATENT

54. PayRange realleges and incorporates the allegations of the preceding paragraphs of this complaint as if fully set forth herein.

13

55. PayRange is the assignee and owner of all right, title, and interest in and to the '772 Patent. PayRange has the exclusive right to make, use, sell, and offer to sell any product embodying the '772 Patent throughout the United States, and to import any product embodying the '772 Patent into the United States.

56. A significant advantage of the '772 Patent is the capability to display one or more multiple payment accepting units that are in proximity to the mobile device and are available to accept payment. The '772 Patent allows a user to select one of many different machines based on proximity and availability of the machines and initiate payment to the selected machine using a mobile device. This was an unconventional solution absent from the prior art such as U.S. Publication No. 2019/0236586 ("Mei") and U.S. Publication No. 2016/0132870 ("Xu"). The examiner found that the prior art references fail to teach or suggest claim 11 of the '772 Patent.

57. Claim 11 of the '772 Patent was unconventional in several respects. Claim 11 is directed to an improved user interface that contains essential information in requesting products and/or service from a payment accepting units in a particular manner. Before users request products and/or services, the mobile payment application shows available payment accepting units and the prepared balance. When users request products and/or services, the mobile payment application shows an indication of the initiation of transaction. Conventionally, the user interface was displayed on the payment accepting units themselves. Using the mobile phone as the user interface was unconventional. Additionally, the information described above was not easily accessible to users or the information was shown on the interfaces of the payment accepting units, which were limited in the amount and the type of information that can be displayed.

58. The PTAB further confirmed that claim 11 of the '772 Patent is valid over U.S. Patent No. 10,210,501 ("Low") and U.S. Patent No. 8,255,323 ("Casey"). '772 Patent, IPR2025-

00573, Paper 10. The PTAB found that *Low* discloses that a transaction is initiated "*prior to* the user selecting the payment button to trigger payment." *Id*. at 21-24. In contrast, the claim requires that "an affordance that when slid, *indicates the initiation of the transaction*." *Id*. The PTAB further concluded that *Casey* does not cure *Low's* deficiency. *Id*. This element was, therefore, well-understood, routine or conventional in the prior art.

59. Upon information and belief, Airwallet has and is infringing claim 11 of the '772 Patent in this District and elsewhere in the United States, by, among other things, directly or through intermediaries, using products with mobile payment functionality, covered by claim 11 of the '772 Patent to the injury of PayRange. Airwallet is directly infringing, literally infringing, and/or infringing the '772 Patent under the doctrine of equivalents. Airwallet is thus liable for infringement of the '772 Patent pursuant to 35 U.S.C. § 271(a).

60. Airwallet has known of the existence of the '772 Patent since at least the date of PayRange's initial notice letter (June 28, 2024), and Airwallet's acts of infringement have been willful and in disregard for the '772 Patent, without any reasonable basis for believing that it had a right to engage in the infringing conduct.

61. **<u>Exhibit 5,</u>** which is incorporated herein, was provided to Airwallet with PayRange's initial notice letter and is a chart which provides an element-by-element comparison between Airwallet and claim 11 of the '772 Patent.

62. Airwallet actively encourages their business partners and/or customers to use the Accused Products in an infringing manner, including through installation and configuration instructions for deploying Airwallet PRO hardware with payment-operated machines, user guides and training materials directing end users to initiate and complete a transaction via the Airwallet App and mobile interface, marketing and sales materials promoting the Accused Products' ability

to enable mobile transactions with specific machines, and technical support that assists customers in configuring and operating the Accused Products in an infringing manner. Airwallet encourages infringement with a specific intent to cause its business partners and customers to infringe and with knowledge of the '772 Patent since at least June 28, 2024. Airwallet's acts thus constitute active inducement of patent infringement in violation of 35 U.S.C. § 271(b).

63. Airwallet's direct infringement and inducement of infringement have irreparably harmed PayRange. On information and belief, PayRange has lost prospective customers and was forced to compete against its own technology, at least in part, due to Airwallet's infringement. The continued infringement harms PayRange's reputation in the marketplace and discourages other potential customers from purchasing PayRange's solutions. These reputational and business harms cannot be adequately remedied by monetary compensation.

64. Upon information and belief, Airwallet will continue to infringe the '772 Patent unless enjoined.

65. Pursuant to 35 U.S.C. § 284, PayRange is entitled to damages adequate to compensate for the infringement, including a reasonable royalty and/or lost profits. PayRange has complied with 35 U.S.C. § 287 through its virtual patent marking practices and, as discussed above, provided Airwallet with actual notice.

66. This case is "exceptional" within the meaning of 35 U.S.C. § 285, and PayRange is entitled to an award of attorneys' fees.

**REQUEST FOR RELIEF**

WHEREFORE, PayRange requests that the Court find in its favor and against Airwallet, and that the Court grant PayRange the following relief:

a. Judgment that Airwallet infringes the patents-in-suit;

b.  Judgment that Airwallet is jointly and severally liable for infringement of the patents-in-suit.

c.  That PayRange be granted with injunctive relief against Airwallet and its officers, employees, agents, servants, attorneys, instrumentalities, and/or those in privity with them, to prevent the recurrence of the infringing activities complained of herein, including an injunction against further installations of infringing payment modules and removing all infringing mobile apps from all third party app stores such as the Google Play Store and Apple App Store, and for all further proper injunctive relief pursuant to 35 U.S.C. § 283;

d.  Judgment that Airwallet account for and pay to PayRange all damages and costs incurred by PayRange, caused by Airwallet's infringing activities complained of herein;

e.  Judgment that Airwallet willfully infringed and increase the damages award to PayRange up to three times the amount assessed, pursuant to 35 U.S.C. § 284;

f.  That PayRange be granted pre-judgment and post-judgment interest on the damages;

g.  That this Court declare this an exceptional case and award PayRange reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

h.  That PayRange be granted such other and further relief as the Court may deem just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of this action.

|  |  |
|---|---|
| | Respectfully submitted, |
| | POTTER ANDERSON & CORROON LLP |
| OF COUNSEL: | By: */s/ David E. Moore* |
| | David E. Moore (#3983) |
| James C. Yoon | Bindu A. Palapura (#5370) |
| Ryan R. Smith | Andrew M. Moshos (#6685) |
| WILSON SONSINI GOODRICH & ROSATI | Malisa C. Dang (#7187) |
| 650 Page Mill Road | Hercules Plaza, 6th Floor |
| Palo Alto, CA 94304 | 1313 N. Market Street |
| Tel: (650) 493-9300 | Wilmington, DE 19801 |
| | Tel: (302) 984-6000 |
| Jamie Y. Otto | dmoore@potteranderson.com |
| WILSON SONSINI GOODRICH & ROSATI | bpalapura@potteranderson.com |
| 953 East Third Street, Suite 100 | amoshos@potteranderson.com |
| Los Angeles, CA 90013 | mdang@potteranderson.com |
| Tel: (323) 210-2900 | |
| | *Attorneys for Plaintiff PayRange LLC* |
| Dated: February 3, 2026 | |
| 12682983 / 23372.00003 | |